UNITED STATES DISTRICT COURT

DISTRICT COURT OF OREGON

| | |
|---|---|
| C.F. (Frank) Vulliet, a/k/a<br>Charles F. Vulliet,<br><br>      Plaintiff,<br><br>    v.<br><br>State of Oregon; Kate Brown,<br>in her official capacity as<br>Secretary of State; and Steven<br>N. Trout in his official capacity<br>as Director of Elections Division,<br><br>      Defendants. | Case No. 6:12-cv-492-AA<br><br>OPINION AND ORDER |

Aiken, Chief Judge:

    Plaintiff, appearing pro se, filed suit against the State of Oregon and Oregon elections officials (collectively, the State). Plaintiff generally challenges the State's enforcement of an Oregon statute requiring a candidate to be affiliated with a party for 180 days before seeking election as a major party candidate. The State

1 - OPINION AND ORDER

moves to dismiss plaintiff's complaint on grounds that his claims are moot and that he fails to state a claim for which relief may be granted. Fed. R. Civ. P. 12(b)(1),(6). The motion is granted, in part.

## I. BACKGROUND

The following facts are taken from plaintiff's complaint, and, for purposes of this motion, are accepted as true. Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010).

Plaintiff is a resident of the State of Oregon, residing within the Second Congressional District. On January 19, 2012, plaintiff registered as an Oregon voter and subsequently received a voter registration card. At that time, plaintiff did not specify a party affiliation.

On February 22, 2012, plaintiff changed his party affiliation to "Democratic Party" through the Oregon Secretary of State's internet website. Plaintiff also mailed a hard copy of his amended voter registration to the Deschutes County Clerk.

Plaintiff decided to run as a Democratic candidate for a seat in the United States House of Representatives, representing Oregon's Second Congressional District. After making this decision, plaintiff spoke with representatives of the Oregon Elections Division regarding his eligibility to run as an affiliated or unaffiliated candidate. Plaintiff alleges that he was told the following information:

1. A candidate need not be an Oregon resident until the day of the election;
2. An unaffiliated candidate is immediately eligible to run for Congress after registering as an Oregon voter;
3. A candidate is not eligible to run in a major party primary election unless the candidate became affiliated with that party at least 180 days prior to the primary filing deadline.

See Compl. ¶ .3.7.

The filing deadline for the Democratic primary was March 6, 2012. Plaintiff did not become affiliated with the Democratic party until February 22, 2012, and under Oregon law was not eligible to run as a major party candidate.

On February 29, 2012, plaintiff sent an email to the Oregon Secretary of State, the Oregon Attorney General, officers of the Democratic Party, and two Congressional candidates and gave notice of his intent to run as a Democratic candidate in the primary election. Plaintiff attached to his email a draft Declaration of Candidacy and a memorandum analyzing his eligibility to run. Plaintiff received no acknowledgment or response to his email.

On March 1, 2012, plaintiff completed and signed a Declaration of Candidacy for the Democratic nomination as Oregon's Congressional Representative for the Second District. Plaintiff made amendments to the candidacy form, stating "I am a member of said political party" and striking all references to the statutory

3 - OPINION AND ORDER

180-day party affiliation requirement. Plaintiff delivered his candidacy declaration, along with the $100 fee, to the Secretary of State's office.

On March 2, 2012, plaintiff was informed by the Elections Division that his Declaration of Candidacy had been refused. Plaintiff eventually spoke to defendant Trout who advised plaintiff that the filing was refused because: 1) plaintiff had not registered as a Democrat by September 8, 2011, 180 days prior to the primary filing deadline; and 2) plaintiff had made unauthorized changes to the filing form. Trout also informed plaintiff that the Elections Division would not change its position absent a court order.

On March 5, 2012 plaintiff received a letter from the Elections Division refusing his candidacy.

On March 19, 2012 plaintiff filed this action. To date, plaintiff has not sought temporary or preliminary injunctive relief.

## II. DISCUSSION

### A. Challenge to the 180-day Party Affiliation Requirement

Oregon law requires that a major party candidate be affiliated with such party at least 180 days before the filing deadline for the primary election. Or. Rev. Stat. § 249.046 ("If a candidate has not been a member of the major political party for at least 180 days before the deadline for filing a nominating petition or

declaration of candidacy, the candidate shall not be entitled to receive the nomination of that major political party."). Plaintiff alleges that the 180-day party affiliation requirement denies him equal protection under the law and the privileges and immunities to which he is entitled and violates his rights under the First and Fourteenth Amendments. Plaintiff also contends that the requirement imposes additional and therefore unconstitutional qualifications on seeking office as a Congressional Representative. See U.S. Const. art. I, § 2, cl. 2 (a Congressional Representative must be twenty-five years old, a United States citizen for seven years, and a resident of the relevant state at the time of election).

The State argues that plaintiff's challenge to the 180-day party affiliation requirement is now moot, because the primary election has occurred and plaintiff will meet the 180-day requirement by the next primary election. "A case may become moot after it is filed, when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Wolfson v. Brammer, 616 F.3d 1045, 1053 (9th Cir. 2010) (internal quotation marks and citations omitted). Although a model of neither clarity nor coherence, plaintiff's response invokes the "capable of repetition yet evading review" exception to mootness.

This exception applies when: "'(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation that the same

5 - OPINION AND ORDER

complaining party will be subject to the same action again.'" Enyart v. Nat'l Conference of Bar Exam'rs, 630 F.3d 1153, 1159 (9th Cir. 2011) (quoting Fed. Election Comm'n v. Wis. Right to Life, Inc., 551 U.S. 449, 462 (2007)). Significantly, "the exception frequently arises in election cases 'because the inherently brief duration of an election is almost invariably too short to enable full litigation on the merits.'" Human Life of Wash. Inc. v. Brumsickle, 624 F.3d 990, 1002 (9th Cir. 2010) (quoting Porter v. Jones, 319 F.3d 483, 490 (9th Cir. 2003)); Wolfson, 616 F.3d at 1054.

The State emphasizes that plaintiff cannot show a "reasonable expectation" that he will face the same circumstances in the future, because he will meet the party affiliation requirement before the next Democratic primary election.

In support of its argument, the State relies on the Supreme Court's ruling in Hall v. Beals, 396 U.S. 45 (1969) (per curiam). There, the Court found moot the appellants' challenge to a six-month residency requirement for voting eligibility in Colorado. Id. at 48. The Court reasoned that by the time the appellants' claim reached a posture for resolution, the election had concluded, the appellants had satisfied the six-month residency requirement, and the Colorado Legislature had amended the challenged law to require a two-month residency requirement. Id. at 48. In particular, the Court emphasized the change in Colorado law:

> [T]he recent amendatory action of the Colorado Legislature has surely operated to render this case moot. . . . *[U]nder the statute as currently written, the appellants could have voted in the 1968 presidential election.* The case has therefore lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law.

Id. at 48 (emphasis added). The Court explained that "the appellants' opposition to residency requirements in general cannot alter the fact that so far as they are concerned nothing in the Colorado legislative scheme *as now written* adversely affects either their present interests, or their interests at the time this litigation was commenced." Id. (emphasis added); see also id. at 49 (distinguishing challenge to election law that had not been amended). I do not find that Hall precludes application of the "capable of repetition yet evading review" exception in this case.

Unlike the situation in Hall, the 180-day affiliation requirement remains "on the books" in Oregon, and plaintiff arguably could find himself in the same situation should he decide to change his party affiliation prior to declaring his candidacy for office. See Dunn v. Blumstein, 405 U.S. 330, 333 n.2 (1972); Schaefer v. Townsend, 215 F.3d 1031, 1033 (9th Cir. 2000) (finding challenge not moot where the state could enforce the candidate residency requirement in the future); Barilla v. Ervin, 886 F.2d 1514, 1520-21 (9th Cir. 1989) (while one plaintiff's challenge to a voter registration requirement became moot after an amendment prevented that controversy from repeating, other plaintiffs'

7 - OPINION AND ORDER

challenges were not moot where the amendment did not affect the factual bases of those controversies), overruled on other grounds by Simpson v. Lear Astronics Corp., 77 F.3d 1170, 1174 (9th Cir. 1996). Consequently, the 180-day requirement still would affect plaintiff's interests under circumstances similar to those existing "at the time this litigation was commenced." Hall, 396 U.S. at 48.

Further, the Supreme Court and the Ninth Circuit have held that a challenge to an election law does not become moot simply because the relevant election has concluded or an election requirement has been met. See Dunn, 405 U.S. at 333 n.2 (explaining that a challenge to a durational residence requirement was not rendered moot after the appellee met the requirement; "unlike [Hall], the laws in question remain on the books, and Blumstein has standing to challenge them as a member of the class of people affected by the presently written statute"); Caruso v. Yamhill Cnty. ex rel. Cnty. Comm'r, 422 F.3d 848, 853-54 (9th Cir. 2005) (declining to find challenge to ballot title requirement moot even though the measure had failed and the plaintiff expressed no intent to pursue a similar measure in the future); Rubin v. City of Santa Monica, 308 F.3d 1008, 1013 (9th Cir. 2002) ("Although the City of Santa Monica's 2000 election has passed, Rubin's claims are capable of repetition because future city election overseers would deny him the ability to use the designation 'peace activist' on the ballot."); Barilla, 886 F.2d at 1519-20.

For example, in <u>Schaefer</u> the plaintiff was a Nevada resident who challenged registration and residency requirements that precluded his candidacy for a vacant House of Representatives seat in California's 44th Congressional District. 215 F.3d at 1032. The election had concluded by the time the plaintiff's claim was litigated, and the plaintiff refused to disclose whether he intended to run for future office in California. <u>Id.</u> at 1033. The Ninth Circuit held that neither the conclusion of the election nor the plaintiff's refusal to declare his intentions rendered his claim moot, because "in the future California would deny him or any other nonresident the right to file a declaration of candidacy." <u>Id.</u> The court reasoned that the "capable of repetition" exception should not be construed narrowly, given that other cases had "proceeded to the merits without examining the future political intentions of the challengers." <u>Id.</u> (citing <u>Dunn</u>, 405 U.S. at 333, n. 2). The Ninth Circuit likewise found that the plaintiff's subsequent California residency did not moot his claim. <u>Id.</u> at 1033 n.1.[1]

---

[1] The analysis in <u>Schaefer</u> rested in large part on the Supreme Court's decision in <u>Dunn</u>. <u>Schaefer</u>, 215 F.3d at 1033 (quoting <u>Dunn</u>, 405 U.S. at 333 n.2). However, unlike <u>Dunn</u>, the plaintiff in <u>Schaefer</u> (like plaintiff in this case) did not bring suit as a class action; he brought suit on behalf of only himself. Nonetheless, the Ninth Circuit in <u>Schaefer</u> did not recognize this distinction. Given the collective reasoning of <u>Caruso</u>, <u>Rubin</u>, <u>Schaefer</u>, and <u>Barilla</u>, I am constrained from interpreting the mootness exception as narrowly as argued by the State. <u>Cf.</u> <u>Wolfson</u>, 616 F.3d at 1055-56 (discussing the holding in <u>Schaefer</u> regarding the future intent of a plaintiff).

9 - OPINION AND ORDER

Here, the Oregon 180-day party affiliation requirement remains in effect, and the State's refusal of plaintiff's candidacy pursuant to § 249.046 is capable of repetition should he change his affiliation prior to seeking nomination as a major party candidate. See Honig v. Doe, 484 U.S. 305, 318 n.6 (1988) ("Our concern in these cases, as in all others involving potentially moot claims, was whether the controversy was *capable* of repetition and not . . . whether the claimant had demonstrated that a recurrence of the dispute was more probable than not."). Thus, under Ninth Circuit precedent, plaintiff's claim is not moot, and the State's motion to dismiss is denied.

B. Standing to Challenge Unaffiliated Candidate Requirements

The State also moves to dismiss any claim that purports to challenge Oregon election laws governing minor party or unaffiliated candidates. In paragraph 5.3 of plaintiff's Complaint, he requests that the court declare "provisions of Oregon election law void, invalid and unenforceable to the extent they impose additional burdens [or] requirements on candidates who would seek partisan office as minor party or unaffiliated candidates[.]" Compl. ¶ 5.3. The State argues that plaintiff lacks standing to seek such declaratory relief, because he has not attempted to run for election as a minor party or unaffiliated candidate. I agree.

In his asserted causes of action, plaintiff does not allege that the State violated his constitutional rights by enforcing laws

relating to minor party or unaffiliated candidates. Compl. ¶¶ 4.1-4.7. In fact, plaintiff's Complaint contains no allegation that the laws governing minor or unaffiliated candidates are invalid or unconstitutional. Plaintiff nevertheless maintains that his challenge is justiciable, because he seeks injunctive relief allowing him to run as an independent candidate in the general election to remedy the rejection of his candidacy in the Democratic primary election.

Regardless of the remedy sought by plaintiff (or its availability), his Complaint does not allege that he attempted to run as an unaffiliated or minor party candidate or that the State enforced statutes governing such candidates when rejecting his candidacy. Thus, plaintiff has not suffered a "concrete and particularized" injury in fact that is "fairly traceable to the challenged action" of the State. See <u>Braunstein v. Ariz. Dep't of Transp.</u>, 683 F.3d 1177, 1184 (9th Cir. 2012). Therefore, plaintiff lacks standing to challenge Oregon election laws related to minor party or unaffiliated candidates, and any such claim is dismissed.

<u>C. Eleventh Amendment Immunity</u>

The State next argues that plaintiff's claims against the State of Oregon and seeking damages from State officials must be dismissed pursuant to Eleventh Amendment immunity. The State is correct on both counts.

Under the Eleventh Amendment, the State of Oregon is immune

11 - OPINION AND ORDER

from suit in federal court absent its consent. The State of Oregon has not consented to suit in this Court, and the claims against it must be dismissed. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989) (§ 1983 "does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties"). Similarly, the Eleventh Amendment bars claims for damages against state officials sued in their official capacities. See Holley v. Cal. Dep't of Corr., 599 F.3d 1108, 1111 (9th Cir. 2010) (for immunity purposes, suits against state officials in their official capacities are treated as suits against the state); Franceschi v. Schwartz, 57 F.3d 828, 831 (9th Cir. 1995) ("The Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, an 'arm of the state,' its instrumentalities, or its agencies.") (per curiam). Plaintiff brings suit against defendants Brown and Trout in their official capacities, and therefore plaintiff may not seek damages.

The State also argues that plaintiff cannot bring a claim alleging violations of the Oregon Constitution. Again, the State is correct. The Eleventh Amendment "bars the adjudication of pendent state law claims against nonconsenting state defendants in federal court." Raygor v. Regents of Univ. of Minn., 534 U.S. 533, 540-41 (2002) (citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 10 (1984)); see also id. at 541 ("[W]e cannot read [28 U.S.C.] § 1367(a) [providing supplemental jurisdiction] to authorize

12 - OPINION AND ORDER

district courts to exercise jurisdiction over claims against nonconsenting States."). Thus, plaintiff's claim under the Oregon Constitution must be brought in state court and is dismissed.

D. Claim Against Secretary of State Brown

Finally, the State argues that Secretary of State Brown should be dismissed from this action, because plaintiff alleges no personal action on her part that violated his rights under federal law. Plaintiff responds that Secretary Brown is a proper defendant, because she is the chief elections officer of the State and is responsible for "maintain[ing] uniformity in the application, operation and interpretation of the election laws." Or. Rev. Stat. § 246.110.

However, plaintiff makes no allegation that Secretary Brown took any personal action in connection with the denial of his candidacy. Rather, plaintiff alleges that he spoke with representatives from the Elections Division, including defendant Trout, and that he received a letter of denial from the Elections Division, not the Secretary of State. Compl. ¶ 3.14-.16. Plaintiff does not allege that Secretary Brown signed or personally authorized or approved the letter to plaintiff. Likewise, plaintiff does not cite or identify a statute that provides for the Secretary of State's involvement in the review, acceptance, or denial of major party candidate declarations. Therefore, plaintiff fails to allege personal involvement by Secretary of State Brown to pursue

13 - OPINION AND ORDER

a § 1983 claim against her. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 675-76 (2009) (under § 1983 a government official may be held liable only for the official's own conduct); <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983 arises only upon a showing of personal participation by the defendant.").

## CONCLUSION

Accordingly, the State's Motion to Dismiss (doc. 15) is GRANTED in part and DENIED in part, and the following claims are DISMISSED:

1. Plaintiff's claims against the State of Oregon and Secretary of State Brown;

2. Plaintiff's claim for damages under 42 U.S.C. § 1983;

3. Plaintiff's claim under 42 U.S.C. § 1981; and

4. Any claim challenging Oregon laws governing minor party or unaffiliated candidates.

IT IS SO ORDERED.

Dated this 10th day of October, 2012.

_____
Ann Aiken
United States District Judge

14 - OPINION AND ORDER