IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


C.F. (Frank) Vulliet, a/k/a
Charles F. Vulliet,

      Plaintiff,

  v.

STATE OF OREGON, et al.

      Defendants.

Civ. No. 6:12-cv-00492-AA

OPINION AND ORDER

---

C.F. (Frank) Vulliet,
P.O. Box 4667, 23 Rogue Lane
Sunriver, OR 97707-1667
    Plaintiff appearing Pro Se

Ellen F. Rosenblum
Attorney General
Sarah Weston
Matthew J. Merritt
Assistant Attorneys General
Oregon Department of Justice
1515 SW Fifth Ave., Suite 410
Portland, OR 97201
    Attorneys for defendants


1 - OPINION AND ORDER

AIKEN, Chief Judge:

Remaining in this action are plaintiff Charles F. Vulliet's claims alleged against defendant Steven N. Trout in his official capacity as the Director of Elections Division in the Oregon Secretary of State's Office. Plaintiff alleges that defendant's enforcement of the 180-day major party affiliation requirement under Or. Rev. Stat. § 249.046 violates Article 1, Section 2, Clause 2 of the U.S. Constitution, commonly known as the "Qualifications Clause." Plaintiff also alleges that § 249.046 violates the First and Fourteenth Amendments by impermissibly infringing on his right to freely associate with the Democratic Party of Oregon (DPO). Plaintiff moves for partial summary judgment invalidating § 249.046 on both grounds and seeks an order immediately enjoining further enforcement of § 249.046 and awarding costs, attorney's fees, and other relief as may be appropriate. Defendant opposes plaintiff's motion and likewise moves for summary judgment on both the Qualifications Clause and First Amendment claims.

BACKGROUND

Plaintiff is a resident of Deschutes County, Oregon, within the Second Congressional District. On January 19, 2012, plaintiff registered as an Oregon voter and subsequently received a voter registration card. Plaintiff did not specify a party affiliation at that time.

2 - OPINION AND ORDER

On February 22, 2012, plaintiff changed his party affiliation to "Democratic Party" through the Oregon Secretary of State's internet website. Plaintiff also sent a hard copy of his amended voter registration to the Deschutes County Clerk via mail.

Plaintiff decided to run for a seat in the United States House of Representatives from Oregon's Second Congressional District as a candidate of the Democratic Party. After making his decision, plaintiff contacted members of the Oregon Elections Division regarding his eligibility to run as an affiliated or unaffiliated candidate. Plaintiff alleges that he was told the following information:

1. A candidate need not be an Oregon resident until the day of the election;
2. An unaffiliated candidate is immediately eligible to run for Congress after registering as an Oregon voter; and
3. A candidate is not eligible to run in a major party primary election unless he or she becomes affiliated with that party at least 180 days prior to the primary filing deadline, as required by § 249.046. See Compl. ¶ 3.7.

The filing deadline for the Democratic primary was March 6, 2012. Plaintiff did not become affiliated with the Democratic Party until February 22, 2012; thus, under § 249.046, he was ineligible to run as a Democratic candidate. See Or. Rev. Stat.

3 - OPINION AND ORDER

§ 249.046 ("If a candidate has not been a member of the major political party for at least 180 days before the deadline for filing a nominating petition or declaration of candidacy, the candidate shall not be entitled to receive the nomination of that major political party.").

On February 29, 2012, plaintiff emailed the Oregon Secretary of State, the Oregon Attorney General, officers of the DPO, and two Congressional candidates, giving notice of his intent to run as a Democratic candidate in the primary election. Plaintiff attached to his email a draft Declaration of Candidacy and a memorandum analyzing his eligibility to run. Plaintiff received no response or acknowledgment of receipt from any party.

On March 1, 2012, plaintiff completed and signed a Declaration of Candidacy for the Democratic nomination as Oregon's Congressional Representative for the Second District. Plaintiff made amendments to the candidacy form, stating "I am a member of said political party" and striking all references to the statutory 180-day party affiliation requirement. Plaintiff delivered his candidacy declaration, along with the $100 fee, to the Secretary of State's office.

On March 2, 2012, plaintiff contacted the Elections Division and was informed that his Declaration of Candidacy had been refused. Plaintiff eventually spoke to defendant Trout who advised plaintiff that the filing was refused for two reasons: 1)

4 - OPINION AND ORDER

plaintiff had not complied with § 249.046 by failing to register as a Democrat by September 8, 2011, 180 days prior to the filing deadline; and 2) plaintiff had made unauthorized changes to the filing form. Trout also informed plaintiff that the Elections Division would not change its position absent a court order requiring such action. On March 5, 2012, plaintiff received a letter from the Elections Division refusing his candidacy.

On March 19, 2012, plaintiff filed this lawsuit, naming the State of Oregon, Kate Brown in her official capacity as Oregon's Secretary of State, and Steven N. Trout in his official capacity as Director of the Elections Division as defendants. October 10, 2012, this Court issued an order dismissing plaintiff's claims against the State of Oregon and Secretary of State Brown pursuant to Fed. R. Civ. P. 12(b)(6).

On October 28, 2012, plaintiff moved for partial summary judgment against defendant Steven N. Trout. Defendant opposed plaintiff's motion, and on November 21, 2012 moved for summary judgment.

## SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant's assertion that there is no genuine issue of material fact must be supported by "citing to particular parts of

5 - OPINION AND ORDER

materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations...admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

The materiality of a fact is determined by the substantive law on the issue. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n., 809 F.2d 626, 630 (9th Cir. 1987). The authenticity of a dispute is determined by whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. V. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Here, the parties do not dispute the salient facts as alleged in plaintiff's complaint. Rather, the issue is whether § 249.046 and its enforcement by defendant Trout violated the Qualifications Clause and plaintiff's First Amendment rights as a matter of law.

DISCUSSION

A. Qualifications Clause

6 - OPINION AND ORDER

Plaintiff asserts that § 249.064 violates the Qualifications Clause by imposing a 180-day affiliation requirement before a candidate may seek election as a major party candidate. According to plaintiff, this requirement adds three qualifications to hold office as a U.S. Representative in addition to what the Qualifications Clause already requires: Oregon residency, Oregon voter registration, and political party registration. Accordingly, plaintiff insists that § 249.046 violates the Qualifications Clause and should be invalidated.

Defendant responds that § 249.046 imposes no additional qualifications to holding office as a U.S. Representative and is valid under the Elections Clause of the U.S. Constitution. See U.S. Const. art. 1, §4, cl.1. Defendant argues that § 249.046 merely forecloses one route to the primary ballot without presenting a categorical bar to holding congressional office; thus, it does not implicate the Qualifications Clause.

The Qualifications Clause provides: "No person shall be a Representative who shall not have attained the Age of twenty five years, and been seven Years a Citizen of the United States, and who shall not, when elected, be an Inhabitant of that State in which he shall be chosen." U.S. Const. art. 1, §2, cl.2. These three requirements are an exhaustive list; any additional qualifications imposed by state or federal law are unconstitutional. U.S. Term Limits v. Thornton, 514 U.S. 779,

7 - OPINION AND ORDER

827 (1995); Powell v. McCormack, 395 U.S. 486, 550 (1969).

However, the Elections Clause gives states substantial power to regulate the "time, place, and manner" in which elections for federal office are conducted. U.S. Const. art I, §4, cl.1. "The Elections Clause gives States authority "'to enact the numerous requirements as to procedure and safeguards which experience shows are necessary in order to enforce the fundamental right involved.'" Thornton, 514 U.S. at 834 (quoting Smiley v. Holm, 285 U.S. 355, 366 (1932)). Defendant claims § 249.046 does this by streamlining the electoral process in Oregon and preventing confusion, delay, and fraud.

No bright line rule separates permissible laws under the Elections Clause from unconstitutional laws and regulations under the Qualifications Clause. Rather, valid procedural regulations protect "the integrity and regularity of the electoral process," whereas an unconstitutional qualification establishes a categorical bar to an entire class of candidates seeking office. Thornton, 514 U.S. at 835. "The Framers intended the Elections Clause to grant States authority to create procedural regulations, not to provide the state with license to exclude classes of candidates from federal office." Id. at 832-33. Thus, an absolute bar to holding office "'cloaked in ballot access clothing'" constitutes an unconstitutional additional qualification. Id. at 830 (quoting Gomillion v. Lightfoot, 364

8 - OPINION AND ORDER

U.S. 339, 345 (1960)). In other words, a state election law "is unconstitutional when it has the likely effect of handicapping a class of candidates and has the sole purpose of creating additional qualifications." Id. at 836 (emphasis added).

It is undisputed that plaintiff satisfies the Qualifications Clause's three requirements: he is older than twenty five, is a natural born citizen of the United States, and was an inhabitant of Oregon at the time he attempted to register as a Democratic candidate. It is also undisputed that § 249.046 prevented plaintiff from running as a DPO candidate on the primary ballot, because he did not meet the 180-day affiliation requirement and was ineligible to be listed as a Democrat.

Significantly, plaintiff was not precluded from seeking election to Congress by § 249.046; he was precluded from seeking election as a Democratic candidate. Election laws which bar non-compliant individuals from holding office, without more, are valid regulations under the Elections Clause. "It seems to us that limiting the choice of candidates to those who have complied with state election law requirements is the prototypical example of a regulation that, while it affects the right to vote, is eminently reasonable." Anderson v. Celebrezze, 460 U.S. 780, 792, n.12 (1983). Further, "[a]lthough a disaffiliation provision may preclude voters from supporting a particular ineligible candidate, they remain free to support and promote

9 - OPINION AND ORDER

other candidates who satisfy the state's disaffiliation requirements." Timmons v. Twin Cities Area New Party, 520 U.S. 351, 359 (1997) (quoting Anderson, 460 U.S. at 793, n.15)

Moreover, § 249.046 does not handicap any class of candidates or create a categorical bar to ballot eligibility; it simply requires compliance with a time limit before running as a major party candidate. Otherwise qualified candidates are not barred from seeking a minor party's nomination. See Or. Rev. Stat. § 249.075. Non-eligible individuals can also seek a major party's nomination through a write-in campaign during the primary or general election phase. See Or. Rev. Stat. § 249.046 ("the requirement that the candidate be qualified by length of membership does not apply...to a write-in candidate.").

When viable alternative methods of obtaining access to the ballot exist, an election regulation enjoys a strong presumption of constitutionality. Storer v. Brown, 415 U.S. 724, 746, n.16 (1974). Because § 249.046 forecloses only one of many potential routes to the ballot in Oregon, the statute does not create a de facto "qualification." No "class" is affected by the law and anyone barred from being seeking election as a major party candidate can seek election in a number of different ways. Accordingly, I find no violation of the Qualifications Clause. Plaintiff's motion for partial summary judgment is denied, and defendant's cross-motion for summary judgment on this issue is

10 - OPINION AND ORDER

granted.

B. Freedom of Association

Plaintiff next argues that enforcement of § 249.046 violated the First and Fourteenth Amendments by abridging his fundamental rights of political association, political speech, and fair, equal participation in the electoral process.[1] According to plaintiff, § 249.046 must pass strict scrutiny because it impinges on his First Amendment rights. Plaintiff claims the statute fails to do so. Consequently, he seeks summary judgment invalidating the law as applied to all state and federal elections.

Defendant asserts the State of Oregon has a constitutionally protected interest in promulgating statutes like § 249.046 as a means of safeguarding the electoral process. Defendant claims § 249.046 achieves this objective by promoting efficiency and predictability in the electoral process while reducing the likelihood of voter confusion and occurrences of interparty raiding. Defendant maintains that § 249.046 should be analyzed under a more flexible test than strict scrutiny because § 249.046

---

[1] Plaintiff additionally claims that § 249.046 violates the DPO's associational rights under the First Amendment. The Court declines to consider this argument; third-party standing in a First Amendment claim requires a demonstration that a litigant and the third party whose rights they seek to adjudicate have completely consistent First Amendment interests. Sec'y of State of Md. v. Joseph H. Munson Co., Inc., 467 U.S. 947, 958 (1984). Plaintiff fails to demonstrate this and does not have standing to assert the DPO's rights in this litigation.

11 - OPINION AND ORDER

is a minimally intrusive election regulation designed to safeguard the integrity of elections conducted within the State of Oregon. Thus, it is a reasonable regulation of the electoral process which does not unconstitutionally infringe plaintiff's First Amendment rights.

The First Amendment indisputably protects the right of free political association. Colo. Republican Fed. Campaign Comm'n v. Fed. Election Comm'n, 518 U.S. 604, 616 (1996). The Fourteenth Amendment extends the First Amendment's protections to the actions of state governments. NAACP v. Alabama, 357 U.S. 449, 460 (1958); Gitlow v. New York, 268 U.S. 652, 666 (1925).

State action infringing upon a fundamental right usually warrants the application of strict scrutiny. To satisfy this tier of review, the state must demonstrate that a challenged law advances a compelling state interest and is narrowly tailored to be the least restrictive possible means of implementation. City of Cleburne v. Cleburne Living Ctr, 473 U.S. 432, 440 (1985). While political association is a fundamental right protected by the First Amendment, "to subject every state voting regulation to strict scrutiny and require that the regulation be narrowly tailored to advance a compelling state interest...would tie the hands of States seeking to assure that elections are operated equitably and efficiently." Burdick v. Takushi, 504 U.S. 428, 434 (1992).

12 - OPINION AND ORDER

Courts reviewing election laws must balance the "character and magnitude" of the burden imposed on an aggrieved party's First Amendment associational rights against the interests the state claims as justification. Timmons, 520 U.S. at 358 (citing Burdick, 504 U.S. at 434). Further, courts must consider "the extent to which the State's concerns make the burden necessary." Id. A regulation imposing "severe burdens on plaintiff's rights" must pass strict scrutiny while a lesser burdening of rights will be analyzed under a much more permissive standard. Id.

Defendant contends that plaintiff's First Amendment rights were minimally burdened by § 249.046; defendant highlights the fact that plaintiff could have obtained the DPO nomination through a write-in campaign, regardless of § 249.046's requirement that barred him from running as a major party candidate. Defendant also notes that § 249.046's affiliation period for major party candidacies is inherently time-limited; any non-eligible individual in one election cycle can always meet the statutory requirement for the next election.

I agree that § 249.046 does not impose a "severe" burden. Indeed, a state can create barriers to ballot access in a primary election which do no more than limit the available field of candidates from which voters may choose without triggering strict scrutiny. Bullock v. Carter, 405 U.S. 143, 143 (1972). Accordingly, I do not find strict scrutiny warranted.

13 - OPINION AND ORDER

When an electoral regulation is analyzed under the more flexible standard, a State's important regulatory interests will usually be enough to justify the burden imposed, assuming they are "reasonable, non-discriminatory restrictions." <u>Burdick</u>, 504 U.S. at 434 (quoting <u>Anderson</u>, 460 U.S. at 788). Further, these regulatory interests must only be "sufficiently weighty to ustify the limitation" imposed. <u>Id.</u> "Legislatures...should be permitted to respond to potential deficiencies in the electoral process...provided that the response is reasonable and does not significantly impinge on constitutionally protected rights." <u>Munro</u>, 479 U.S. at 195-96. State election laws "aimed at maintaining the integrity of the various routes to the ballot" are likely permissible. <u>Storer</u>, 415 U.S. 733.

Defendant asserts that § 249.046 is a reasonable, minimally burdensome regulation which safeguards the electoral process by averting confusion and fraud and ensuring that candidates running as a member of a major party are legitimate members of that party. Defendant first maintains that § 249.046 reduces campaign disorder by preventing nonmembers from entering a primary and disrupting the legitimacy of the process. Trout Dec. ¶ 5. Reducing and preventing campaign-related disorder is one legitimate regulatory interest that states enjoy when putting forth electoral regulations; furthering this interest necessarily involves substantial regulation of parties and ballots. <u>Timmons</u>,

14 - OPINION AND ORDER

...
...
...

520 U.S. at 358.

Further, defendant contends that § 249.046 ensures opportunistic unaffiliated candidates cannot throw their hat in the ring just before a primary and win election on the coattails of a major party. Trout Dec. ¶ 6. The Supreme Court has long recognized the prevention of fraudulent candidacies as a compelling state interest. Munro, 479 U.S. at 194-95. Defendant also maintains § 249.046 achieves efficiency and reduced confusion by requiring a reasonable affiliation period of 180 days for major party primary candidates. Trout Dec. ¶ 4. Reducing the number of candidates on the ballot has been recognized as an important state interest; overcrowded ballots frustrate attempts to efficiently administer elections and can lead to mass voter confusion and frustration. Bullock, 405 U.S at 145 (citing Jenness v. Fortson, 403 U.S. 431, 442 (1971)). Thus, I find that § 249.046 serves important regulatory interests.

I find the Supreme Court's decision in Storer v. Brown particularly instructive. There, a prospective independent candidate raised a First Amendment challenge to a California statute declaring those registered as members of a qualified political party within the prior 365 days ineligible to run as independent candidates. Storer, 415 U.S. at 726. The Court found the statute constitutional, reasoning that it protected the

15 - OPINION AND ORDER

legitimacy of the election process:

> [By] refusing to recognize the...candidates who do not make early plans to leave a party...it works against independent candidacies prompted by short-range political goals, pique, or personal quarrel. It is also a substantial barrier to a party fielding an 'independent' candidate to capture and bleed off votes in the general election that might well go to another party.

Storer, 415 U.S. at 735.

Though § 249.046 implements an affiliation requirement as opposed to the statute at issue in Storer, the principle remains the same: Oregon has a compelling interest in preventing electoral fraud, confusion, and disruption. Notably, the 180-day affiliation period required by § 249.046 is significantly shorter than California's year-long disaffiliation period in Storer. Enforcement of § 249.046 in no way barred plaintiff from associating with the DPO as a member or voter, nor does it prevent him from seeking its nomination in any election once he complies with the 180-day requirement. Further, he could have pursued the Democratic nomination via a write-in campaign. See Or. Rev. Stat. § 249.046 ("the requirement that the candidate be qualified by length of time does not apply...to a write-in candidate.").

Plaintiff's reliance on Tashjian v. Connecticut, 479 U.S. 208 (1986) and Cal. Democratic Party v. Jones, 530 U.S. 567 (2000) is misplaced. In Tashjian, the Supreme Court struck down Connecticut's closed primary statute that required political

16 - OPINION AND ORDER

party primary voters to be registered members of that political party after the Republican Party sought to allow independent voters to vote in the Republican primary. 479 U.S. at 210-11. The Court remarked that if the State of Connecticut "provide[d] that only Party members might be selected as the Party's chosen nominees for public office, such a prohibition of potential association with nonmembers would clearly infringe upon the rights of the Party's members under the First Amendment to organize with like-minded citizens in support of common political goals." Id. at 215-216. According to plaintiff, this language established that "a state cannot control who a party nominates," and that § 249.046 is unconstitutional because it "infringes both personal and party rights of political association." Pl.'s Mot. Sum. J. at 13.

However, as the quoted language demonstrates, Tashjian dealt with the associational rights of party members, not prospective party candidates. This is not in dispute here; rather, the issue in this matter is whether the slight infringement on plaintiff's ability to run as a DPO candidate is justified under the circumstances by sufficiently weighty state interests. As in Storer, the answer here is yes. And as previously noted, plaintiff does not have standing to assert the rights of the DPO or its members.

In Jones, the Court invalidated California's "blanket

17 - OPINION AND ORDER

primary" system as violating individual and party rights to freely associate and exclude.[2] Plaintiff asserts that <u>Jones</u> "reaffirm[s] that the party and the individual, not the state, determines party association (or not) both as to who may vote in its primary, and who may be a party candidate." Pl. Mem. 12-13. <u>Jones</u> stands for no such thing. Rather, the Court explicitly held that "in order to prevent 'party raiding' - a process in which dedicated members of a party formally switch to another party to alter the outcome of that party's primary - a state may require party registration a reasonable period of time before a party election." <u>Jones</u>, 530 U.S. at 572. Thus, <u>Jones</u>, <u>Storer</u>, and <u>Tashjian</u> explicitly contradict plaintiff's position: states are permitted to promulgate election laws affecting the associational rights of both prospective party voters and candidates.

In sum, the Elections Clause permits the enforcement of § 249.046's 180-day affiliation requirement. The statute minimally burdens plaintiff's First Amendment rights, and the State has asserted numerous legitimate interests in guarding the electoral

---

[2] A blanket primary is a primary election where a registered voter can vote for any listed candidate, regardless of the voter's party affiliation. The voter may vote for each office listed and can vote for candidates of any party for any position. See <u>Jones</u>, 530 U.S. at 570. Blanket primaries are distinguished from "open" primary systems, which allow any voter to vote for the candidates of any party with the caveat that the voter may vote only for that party's candidates for each position. See <u>id.</u> at 603, n.6.

18 - OPINION AND ORDER

process which outweigh the minimal burden placed on plaintiff.

## CONCLUSION

For the foregoing reasons, plaintiff's Motion for Partial Summary Judgment (doc. 44) is DENIED and defendant's Cross-Motion for Summary Judgment (doc. 50) is GRANTED. Plaintiff's Motion to Strike (doc.55) is DENIED. The Clerk is directed to enter Judgment accordingly.

IT IS SO ORDERED.

Dated this 6th day of March, 2013.

_____
Ann Aiken
United States District Judge

19 - OPINION AND ORDER